IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAIME MELENDEZ, # N-50994, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-1234-SMY |
| | ) |
| MARY B. LOFTIN, | ) |
| and RANDY GROUNDS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff is currently incarcerated at Robinson Correctional Center ("Robinson"), where he is serving an 18-year sentence. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendant Loftin, a physician, was negligent and failed to give him proper medical attention for his serious heart condition.

This case was initially filed in the Northern District of Illinois on July 7, 2014, under Case No. 14-cv-5208. Defendant Godinez (the Director of the Illinois Department of Corrections) was dismissed from the action on September 29, 2014 (Doc. 6), and the case was then transferred to this district.

Plaintiff is 62 years old. He was transferred to Robinson in March 2009, at which time he immediately informed Defendant Loftin that he was having chest pains (Doc. 1, p. 6). She prescribed aspirin, but Plaintiff continued to have chest pain that increased in intensity as time passed.[1] He claims that for the next 3-1/2 years, Defendant Loftin continued to ignore his

---

[1] Plaintiff also notes that while he was in the Cook County Jail from 2007-2009, he was treated with aspirin for his chest pains (Doc. 1, p. 7).

complaints and did not prescribe any other medication, only aspirin.

On September 16, 2012, Plaintiff suffered a heart attack. He was taken to the Carle Hospital in Champaign, three hours from the prison, where he underwent triple-bypass surgery. Ten days later, he was discharged back to Robinson. Soon thereafter, on October 10, 2012, a "clog" developed in one of the bypasses, and Plaintiff suffered a second heart attack (Doc. 1, p. 7). He was returned to the same hospital and a stent was put into the blocked artery (Doc. 1, pp. 11, 22).

Plaintiff claims that since his surgeries, he has not been given proper medical attention or adequately nutritious meals to assist his recovery. He also blames his initial heart attack on the lack of appropriate medical attention during his incarceration (Doc. 1, p. 6).

Plaintiff included several documents with his complaint. In a grievance filed on January 28, 2013 (Doc. 1, pp. 12-15), he states that after he made numerous complaints of chest pain, Defendant Loftin "finally ran a K.C.B.[2] test" on him in May or June of 2012 (Doc. 1, p. 13). The test showed nothing was wrong with him, and she instructed him to continue taking his aspirin.

In the response denying that grievance, it is noted that Defendant Loftin prescribed Plaintiff blood pressure and cholesterol medication along with the low-dose aspirin (Doc. 1, p. 11). After his bypass surgery, he was given all medications that were prescribed by the cardiologist. On October 10, 2012, when he returned to the hospital, it was discovered that he had a blood clot in one of the bypass grafts. After that, he was prescribed Plavix. He was also given an order allowing him to go to the medical gym to walk. A letter from Defendant Loftin dated July 17, 2013, states that Plaintiff was started on Plavix after his stent operation (Doc. 1, p. 20).

---

[2] The Court assumes that Plaintiff is referring to an electrocardiogram (EKG or ECG) test.

Plaintiff also included a report from a physician at the Carle cardiology department, summarizing a November 20, 2012, follow-up visit to evaluate him after the second (stent) surgery (Doc. 1, pp. 21-22). This document lists seven prescription medications which Plaintiff was taking: Aspirin, Plavix, Vasotec, Hydrochlorothiazide, Metoprolol, Zantac, and Zocor. In addition, the doctor noted that his previous prescription of Enalapril for hypertension could be restarted.

As relief, Plaintiff seeks only monetary damages "due to negligence and not receiving the proper medical attention" (Doc. 1, p. 8). However, in the body of the complaint, Plaintiff says that he is requesting "the appropriate and necessary medical treatment that goes with [his] type of condition" (Doc. 1, p. 7).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Notably, Plaintiff bases his claim on the allegations that Defendant Loftin was "negligent" and failed to give him "proper medical attention." However, a defendant's negligence, inadvertent error, or even ordinary malpractice does not violate the Constitution. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

In contrast, a prison official who demonstrates "deliberate indifference to serious medical needs of prisoners" may violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

In order to state a constitutional claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that

condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Here, Plaintiff alleges that he suffered from recurring chest pain prior to his heart attack, which indicated that he needed medical attention. After his surgeries, he had a need for adequate medical care in order to recover. The complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether Defendant Loftin acted or failed to act with deliberate indifference to a known risk of serious harm.

Although Plaintiff asserts that Defendant Loftin gave him no treatment other than aspirin, he contradicts that statement with his admission that she gave him a test in May or June of 2012 which showed nothing was wrong. His other documentation shows that prior to his heart attack, Defendant Loftin had prescribed blood pressure and cholesterol medications in addition to the aspirin. These steps demonstrate that Defendant Loftin gave Plaintiff treatment for his condition in an attempt to address the risk of serious harm. The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference. *Duckworth v. Ahmad*, 532

F.3d 675, 680 (7th Cir. 2008). Defendant Loftin noted that prior to September 2012, Plaintiff's chest pain was not characteristic of cardiac pain (Doc. 1, p. 11). At worst, this conclusion might have been a misdiagnosis, negligence, or malpractice, which also does not violate the Constitution.

None of these facts indicate that Defendant Loftin was deliberately indifferent to Plaintiff's condition before he suffered the heart attack. To the contrary, she provided what appears to have been reasonable treatment. Further, when Plaintiff sought treatment for chest pains on September 16, 2012, he was promptly evaluated and sent to a hospital where he had surgery to restore blood flow to his heart. Again, when he complained of pain that turned out to be a blood clot at a bypass site, he was treated in what appears to be a timely and appropriate manner.

After Plaintiff's surgeries, he was provided with prescription medications to address his condition. He was also authorized to use the prison gym facility in order to follow his recommended exercise program. He points to no specific additional treatment that Defendant Loftin has failed to provide, nor does he describe any requests he has made for treatment that she has denied. His general allegation that he "has not received proper medical attention" does not suffice to state a claim that Defendant Loftin was deliberately indifferent to his medical needs, especially in light of the facts contained in Plaintiff's complaint.

Likewise, Plaintiff's claim that he has "not been given proper nutritional meals" to support his recovery fails to suggest any deliberate indifference on Defendant Loftin's part. He does not claim to have requested or been denied any particular dietary prescriptions from Defendant Loftin or any other prison official. Ordinarily, a prison's meal plans are under the control of the dietary department, not the medical unit. Plaintiff simply has made no connection

between Defendant Loftin and any deficiencies in his diet.

Finally, aside from including Defendant Warden Grounds in the list of Defendants, Plaintiff has made no allegations whatsoever against him in the body of the complaint. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Further, even if Plaintiff had stated an actionable claim against Defendant Loftin, Defendant Grounds could not be held liable for an alleged constitutional violation merely because he is the chief administrator of the prison. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

To summarize, Plaintiff has failed to state a constitutional claim upon which relief may be granted against either Defendant Loftin or Defendant Grounds. This action shall therefore be dismissed with prejudice.

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. All pending motions are **DENIED AS MOOT**.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). The Court has reviewed the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) to verify Plaintiff's reported prior litigation activity. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a

court may judicially notice public records available on government websites) (collecting cases). It was discovered that Plaintiff has already incurred one "strike." *Melendez v. City of Chicago Police Dept.*, Case No. 06-cv-2692 (N.D. Ill., dismissed June 29, 2006 for failure to state a claim). Plaintiff failed to include this case when he was instructed to list all his previous lawsuits in the form civil rights complaint (Doc. 1, pp. 3-5).

The Court relies on a party's litigation history listed in his or her complaint to adhere to the three-strike requirement of 28 U.S.C. § 1915(g), and thus there is a need for reliable information about prior litigation. As a result, where a party fails to provide accurate litigation history, the Court may appropriately dismiss the action for providing fraudulent information to the Court. *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (dismissal appropriate where Court-issued complaint form clearly warned Plaintiff that failure to provide litigation history would result in dismissal). Accordingly, Plaintiff is **WARNED** that if he files any future lawsuit without fully disclosing his litigation history, including his two "strikes," the new action shall be subject to immediate dismissal.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v.*

*Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e)[3] may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  November 19, 2014**

*s/ Staci M. Yandle*
United States District Judge

---

[3] A Rule 59(e) motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.  FED. R. CIV. P. 59(e).